UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DORIAN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No: 4:15-cv-832 |
| vs. | ) | |
| | ) | |
| CITY OF FERGUSON, MISSOURI, | ) | **JURY TRIAL DEMANDED** |
| FERGUSON POLICE CHIEF THOMAS | ) | |
| JACKSON, AND FERGUSON POLICE | ) | |
| OFFICER DARREN WILSON, | ) | |
| | ) | |
| Defendants. | ) | |

# *DEFENDANTS' JOINT MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS*

COME NOW Defendants, the City of Ferguson, Missouri, former Ferguson Police Chief Thomas Jackson, and former Ferguson Police Officer Darren Wilson (the "Defendants"), and for their Memorandum in Support of their Joint Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7-4.01(A), state as follows:

## LAW

Rule 8(a)(2), Fed.R.Civ.P., provides a Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corp. v. Twombly*, the Supreme Court clarified Rule 8(a)(2) requires complaints to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 686 (2009) (a court need not "credit a complaint's conclusory statements without reference to its factual context").

Specifically, to survive a motion to dismiss, a complaint must contain enough factual allegations, accepted as true, to state a claim "that is plausible on its face." *Twombly*, 550 U.S. at 570.

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989)). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 at 678). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678. In support of any type of cause of action, a plaintiff is required to plead more than a mere "unadorned, the-defendant-unlawfully harmed-me accusation." *Id.* at 678. This tenet is especially true in cases involving government entities given the potential application of an immunity defense. *Id.* at 685.

## PROCEDURAL HISTORY

On April 29, 2015, Plaintiff Dorian Johnson filed his Petition against Defendants in the Circuit Court of St. Louis County, Missouri (15SL-CC0148). On May 26, 2015, Defendants filed a Notice of Removal with this Court pursuant to 28 U.S.C. 1441(a). Plaintiff purported to allege causes of action against the Defendants for various occurrences alleged to have taken place on August 9, 2014.

{01392893.DOCX;1}

Specifically, Plaintiff appears to allege the following counts:

- Count I – 42 U.S.C. § 1983 (for violation of rights under the Fourth and Fourteenth Amendments);

- Count II – Assault;

- Count III – Intentional Infliction of Emotional Distress; and

- Count IV – Negligent Infliction of Emotional Distress.

Plaintiff also requests attorneys' fees, punitive damages, and "[a] preliminary and permanent injunction to prevent the City of Ferguson and the Ferguson Police Department from engaging in unconstitutional behavior of unlawful detainment, assault, and excessive use of force. Pet. ¶ Prayer for Relief.

This Memorandum in Support will address several deficiencies in the Petition and request dismissal of particular allegations included in Plaintiff's Petition in the following order:

I) Count I should be dismissed because Defendants Wilson and Jackson (in their individual capacities) are entitled to qualified immunity because Plaintiff has failed to plead anything beyond a mere conclusion that he was "seized" within the meaning of the Fourth and Fourteenth Amendments;

II) Count II regarding state claims for assault should be dismissed for failure to state any claim for relief recognized under Missouri law;

III) Counts III and IV regarding state law claims for intentional and negligent infliction of emotional distress should be dismissed for failure to plead the Plaintiff actually sustained emotional distress that is medically diagnosable and of sufficient severity as to be medically significant.

{01392893.DOCX;1}

IV)     Claims against Defendant Jackson and Defendant Wilson in their official capacities should be dismissed as they are redundant to claims made against the City and because they are entitled, with the City, to sovereign immunity;

V)      Plaintiffs' request for attorneys' fees on state claims should be dismissed for failure to plead any exception to the American Rule, for punitive damages against the City should be dismissed due to federal immunity and sovereign immunity, and for injunctive relief should be dismissed due to lack of an actual controversy, due to mootness, and due to a lack of ripeness.

**ARGUMENT**

**I.      Count I fails to state a cause of action or a claim upon which relief may be granted against all Defendants, and Defendants Jackson and Wilson are entitled to qualified immunity as they not violate any clearly established constitutional rights on August 9, 2014, where Plaintiff does not allege he was seized under the Fourth and Fourteenth Amendment.**

In Count I, Plaintiff purports to raise a cause of action against Defendants for unlawful detainment, excessive force, and failure to intervene pursuant to 42 U.S.C. § 1983 (Fourth and Fourteenth Amendments).

A.      *Defendants Jackson and Wilson.*

Section 1983 is a remedial statute allowing for a person acting under "color of any statute, ordinance, regulation, custom, or usage, of a State or Territory or the District of Columbia" to be held liable for the "deprivation of any rights, privileges, or immunities secured by the Constitution and its laws." 42 U.S.C. § 1983. The statute is "merely a vehicle for seeking a federal remedy for violations of federally protected rights." *Foster v. Wyrick,* 823 F.2d 218,

{01392893.DOCX;1}

221 (8th Cir. 1987).  In a § 1983 action, two essential elements must be present: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct complained of deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *DuBose v. Kelly,* 187 F.3d 999, 1002 (8th Cir. 1999).  Therefore, in evaluating a § 1983 claim, the precise constitutional violation which is alleged must be identified.  *Rogers v. City of Little Rock, Ark.,* 152 F.3d 790, 796 (8th Cir. 1998) (emphasis added).  And, if no constitutional right would have been violated under the established allegations, there is no need for further inquiry concerning qualified immunity.  *McCoy v. City of Monticello (McCoy I),* 342 F.3d 842, 846 (8th Cir. 2003) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).  To establish a Fourth Amendment violation pursuant to § 1983, a claimant must show that a seizure occurred and the seizure was unreasonable.  *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989); *McCoy I*, 342 F.3d at 847.

### 1.    Unlawful detention.

The law recognizes three categories of police encounters: (1) consensual communications involving no coercion or restraint, (2) *Terry* stops—minimally intrusive seizures that are significant enough to invoke the Fourth Amendment and must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause. *United States v. Johnson,* 326 F.3d 1018, 1021 (8th Cir.2003); *see generally Terry v. Ohio,* 392 U.S. 1, 20 (1968), *United States v. Flores-Sandoval*, 474 F.3d 1142, 1144–45 (8th Cir. 2007).  The question whether a seizure occurred is one of law reviewed by the Eighth Circuit de novo.  *Cole v. Bone*, 993 F.2d 1328, 1332 (8th Cir. 1993).

A consensual encounter does not implicate the Fourth Amendment. *United States v. Hathcock,* 103 F.3d 715, 718 (8th Cir.1997).  "Law enforcement officers do not violate the

Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *United States v. Vera,* 457 F.3d 831, 834 (8th Cir.2006), *quoting United States v. Drayton,* 536 U.S. 194, 200 (2002). "Mere police questioning does not constitute a seizure." *United States v. Barry,* 394 F.3d 1070, 1074 (8th Cir.2005), *quoting Florida v. Bostick,* 501 U.S. 429, 434 (1991); *Hathcock,* 103 F.3d at 719; *United States v. Slater,* 411 F.3d 1003, 1005 (8th Cir.2005). A consensual encounter becomes a seizure implicating the Fourth Amendment when, considering the totality of the circumstances, the questioning is "so intimidating, threatening, or coercive that a reasonable person would not have believed himself free to leave." *Hathcock,* 103 F.3d at 718, *quoting United States v. McKines,* 933 F.2d 1412, 1419 (8th Cir.1991) (en banc); *see also Johnson,* 326 F.3d at 1021; *INS v. Delgado,* 466 U.S. 210, 216, (1984); *United States v. Flores-Sandoval*, 474 F.3d 1142, 1145 (8th Cir. 2007). A seizure occurs when the officer, "by means of physical force or show of authority, has in some way restrained the liberty" of a suspect. *Id.* at 1074, *quoting Terry,* 392 U.S. at 19; *United States v. Flores-Sandoval*, 474 F.3d 1142, 1145 (8th Cir. 2007).

It is well established that both investigative stops and arrests are "seizures" under Fourth Amendment law. *U.S. v. Raino*, 980 F.2d 1148, 1149 (8th Cir. 1992). As the Fourth Amendment prohibits unreasonable seizures and not unreasonable or ill-advised conduct in general, this Court should scrutinize only the seizure itself, not the events leading to the seizure, for reasonableness under the Fourth Amendment. *Cole v. Bone*, 993 F.2d 1328, 1333 (8th Cir. 1993) (internal citation omitted). A seizure is not effected through a show of authority until the subject actually yields. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). Where police fire shots at a fleeing suspect that fail to contact the suspect or produce a stop, no seizure has

6

occurred within the confines of the Fourth and Fourteenth Amendment. *Cole*, 993 F.2d at 1333; *see also Adams v. City of Auburn Hills*, 336 F.3d 515, 519–20 (6th Cir. 2003) (finding no seizure where firing at automobile neither hit the suspect nor prevented the suspect from leaving the scene); *United States v. Valentine*, 232 F.3d 350, 358 (3d Cir. 2000) ("Attempted seizures of a person are beyond the scope of the Fourth Amendment.") (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 845 n.7 (1998)); *see also Edwards v. Giles*, 51 F.3d 155, 157 (8th Cir. 1995).

In *Cole*, police attempted to stop a suspect in a high-speed vehicular pursuit. *Cole*, 993 F.2d at 1330. The troopers unsuccessfully deployed roadblocks and fired a shotgun to attempt to disable the tires of the fleeing vehicle. *Id.* The trooper displayed his shotgun "approximately twenty times" before firing several more shots to disable the vehicle. *Id.* at 1331. Another trooper then shot his shotgun through his rear window to gain an unobstructed view, and fired two revolver shots "attempting to disable [the truck's] engine." *Id.* The second shot hit the decedent in the head. *Id.*

The Eighth Circuit held no Fourth Amendment seizure occurred until the second shot hit the decedent in the head. *Id.* at 1332 ("we hold that Cole was not seized until he was struck by the shot from Trooper Rice's revolver"). The Court cited to *Hodari*, stating the other shots fired by law enforcement failed to either hit the decedent or "produce a stop." *Id.* at 1333. Therefore, the previously fired shots "constituted assertions of authority by the officers, but they were not seizures under the Fourth Amendment because Cole did not submit to any of them, nor did any succeed in stopping him." *Id.* The Eighth Circuit reversed the district court's order denying defendants' motion for summary judgment on qualified immunity grounds and remanded with directions that summary judgment be entered in favor of all defendants. *Id.* at 1334.

7

Here, by his own admission, the Plaintiff has failed to plead facts allowing this Court to infer that Plaintiff was ever struck by a bullet or that he failed to flee the scene of the incident after shots were fired. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff has failed to sufficiently plead he was arrested. Accordingly, Plaintiff has failed to plead any cause of action against Defendants Jackson and Wilson under the Fourth and Fourteenth Amendment.

### 2. Excessive force.

To establish a Fourth Amendment violation pursuant to § 1983, a claimant must show that a seizure occurred, and the seizure was unreasonable. *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989); *McCoy I*, 342 F.3d at 847. The Fourth Amendment prohibits the use of excessive force during the seizure of a free citizen. *Graham v. Connor,* 490 U.S. 386, 388 (1989); *Guite v. Wright,* 147 F.3d 747, 750 (8th Cir. 1998). "The key question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Nance v. Sammis*, 586 F.3d 604, 610 (8th Cir. 2009).

As explained, *supra*, Plaintiff has inadequately pleaded (pursuant to *Iqbal*, in light of immunity considerations) he was ever seized within the meaning of the Fourth and Fourteenth Amendments. Accordingly, Plaintiff has failed to plead a cause of action against Defendants Jackson and Wilson under the Fourth and Fourteenth Amendment.

### 3. Failure to intervene.

Plaintiff has alleged Defendants "failed to intervene" regarding the alleged unconstitutional acts. Pet. ¶ 38.

It is "clearly established that an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the

8

Fourth Amendment." *Nance v. Sammis,* 586 F.3d 604, 612 (8th Cir.2009). An officer can be liable for nonfeasance, "where the officer is aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration." *Krout v. Goemmer,* 583 F.3d 557, 565 (8th Cir.2009); *see also Jennings v. Davis,* 476 F.2d 1271, 1275 (8th Cir.1973) (requiring an officer to "have had the duty, opportunity, or the ability to intervene").

On May 11, 2015, the Eighth Circuit issued its ruling in *Grider v. Bowling*. No. 14-2869, 2015 WL 2168302, at *3 (8th Cir. 2015). The Court affirmed summary judgment in favor of an officer where Plaintiff failed to submit any evidence showing that officer was aware of another officer's kick before it occurred or had the opportunity "to take action to deescalate the situation." *Id.* at *3; *see Nance,* 586 F.3d at 612. The Court found it relevant the other officer said nothing before he kicked the Plaintiff, and that there was only one kick. *Grider*, 2015 WL 2168302 at *3. The Court determined "as a matter of law Officer Bowling cannot be liable for nonfeasance under the circumstances of this case." *Id.*

Here, there is no evidence Chief Jackson was nearby to or at the location of the alleged encounter, let alone in a position to intervene. In addition, pursuant to the above, Plaintiff has not alleged a seizure within the confines of the Fourth and Fourteenth Amendments. Therefore, Defendants Wilson and Jackson should be dismissed from Plaintiff's allegations regarding failure to intervene.

### 4. Qualified immunity.

As Plaintiff has failed to plead a constitutional violation under § 1983, Defendants Jackson and Wilson (in their individual capacities) are immune from Plaintiff's suit under the Doctrine of Qualified Immunity. Qualified Immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). It shields public

officials and reduces "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit [public] officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

Individual defendants are entitled to qualified immunity unless their alleged conduct violated "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The law is "clearly established" if it gives the defendant official "fair warning" that his conduct violated an individual's rights when the official acted. *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 846 (8th Cir. 2011) (internal quotations and citations omitted).

The Supreme Court formulated the analysis for qualified immunity in *Saucier*.

> Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right? . . . If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. . . . An officer does not lose his qualified immunity because of a mistaken, yet reasonable belief, nor does an officer lose his immunity because of a reasonable mistake as to the legality of his actions.

533 U.S. at 201 (internal citations omitted) (receded from by *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (giving discretion to courts as to the order of addressing the two prongs). Although the defendant bears the burden of proof for the affirmative defense of qualified immunity, the plaintiff must demonstrate that the law allegedly violated by defendant was clearly established.

*Monroe v. Arkansas State University*, 495 F.3d 591, 594 (8th Cir. 2007). Qualified immunity protects "all but plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Defendants Jackson and Wilson maintain there was no constitutional violation, and that they are entitled to qualified immunity pursuant to the above discussions. Even if there was a violation, however, both Defendants Jackson and Wilson are entitled to qualified immunity, because the law was not clearly established on August 9, 2014, that firing gunshots that fail to contact a suspect where the suspect flees the scene constituted a seizure for purposes of unlawful detention, excessive force, and failure to intervene. *See supra*. Defendants Jackson and Wilson are therefore entitled to dismissal based on qualified immunity.

B.      *Defendant City of Ferguson, Missouri*

A municipality may not be liable under § 1983 if the officer(s) did not commit a constitutional tort against the Plaintiff. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 820 (8th Cir. 2012); *Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007). Plaintiff has failed to show any underlying constitutional violation. *See supra*. Additionally, the City is entitled to dismissal because the law was not clearly established on August 9, 2014, that firing gunshots failing to contact a suspect where the suspect flees the scene constituted a seizure. *See Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1259 (8th Cir. 2010).

The Eighth Circuit has stated:

> Where the municipality has not directly inflicted an injury, however, "rigorous standards of culpability and causation must be applied," and a showing of deliberate indifference is required. The absence of clearly established constitutional rights-what Justice O'Connor called "clear constitutional guideposts,"-undermines the assertion that a municipality deliberately ignored an obvious need for additional safeguards to augment its facially constitutional policy. This is not an application of qualified immunity for liability flowing from

11

an unconstitutional policy. Rather, the lack of clarity in the law precludes a finding that the municipality had an unconstitutional policy at all, because its policymakers cannot properly be said to have exhibited a policy of deliberate indifference to constitutional rights that were not clearly established.

*Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 394 (8th Cir. 2007) (internal citations omitted).

Following the rationale stated in Section I.A.4, *supra*, the City is entitled to dismissal with respect to Count I.

## II. Count II regarding state claims for assault should be dismissed for failure to state a claim for relief recognized under Missouri law.

In Count II, Plaintiff has alleged Defendant Wilson "withdrew his weapon and fired it at Plaintiff Johnson and Michael Brown, Jr." Pet. ¶ 28. Plaintiff further alleges Defendant Wilson assaulted Plaintiff by withdrawing his weapon and threatening to discharge it. Pet. ¶ 55. Plaintiff purports to allege the doctrine of transferred intent applies. Pet. ¶ 56.

Assault is "any unlawful offer or attempt to injure another with the apparent present ability to effectuate the attempt under circumstances creating a fear of imminent peril. *Devitre v. Orthopedic Center of St. Louis, LLC*, 349 S.W.3d 327 (Mo. banc 2011). To plead an assault, the petitioner must allege: "(1) defendant's intent to cause bodily harm or offensive contact, or apprehension of either; (2) conduct of the defendant indicating such intent, and (3) apprehension of bodily harm or offensive contact on the part of the plaintiff caused by defendant's conduct." *Id.*

Missouri has recognized the doctrine of transferred intent regarding criminal prosecutions for homicide. *See State v. Nathan*, 404 S.W.3d 253, 267 (Mo. banc 2013); *State v. Batson*, 96

S.W.2d 384, 389 (Mo. 1936); R.S.Mo. § 565.003.1.   No Missouri case has recognized the

doctrine of transferred intent to apply to the tort of assault.

William L. Prosser has notably championed the concept of transferred intent applying to

torts in common law.   W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS 37–38 (5th

ed.1984); William L. Prosser, *Transferred Intent*, 45 TEX. L. REV. 650 (1967).   Prosser's only

source of authority under English common law, prior to the formation of the United States of

America, was *Scott v. Shepherd*, 2 Wm. Bl. 892, 96 Eng. Rep. 525, 3 Wils. 403, 95 Eng. Rep.

1124 (C.P. 1773).   As Prosser summarizes the case:

> Defendant tossed a lighted firecracker into a markethouse. It fell on a stand near
> Willis, who instantly got rid of it by throwing it across the market toward Ryal.
> Ryal immediately threw it on, so that it went off in plaintiff's face and put out his
> eye. The question was not whether defendant would be liable at all, but whether
> he was liable in trespass. Three of the judges were of the opinion that the
> application of force to the person of plaintiff was sufficiently direct and
> immediate to support trespass, since the acts of Willis and Ryal were forced upon
> them in self-defense. Defendant's act had "deprived them of the power of
> recollection." Chief Judge DeGrey, concurring, drew upon the analogy of the
> criminal cases. Judge Blackstone disagreed, finding the injury consequential
> because of the intervening acts; hence, in his view, only case would lie.

William L. Prosser, *Transferred Intent*, 45 Tex. L. Rev. 650, 654 (1967) (internal citations

omitted).   The *Scott* defendant attempted to batter Willis, but caused a battery on the plaintiff.

*See id.*   Prosser cited to "one later English decision" (James v. Campbell, 5 Car. & P. 372, 172

Eng. Rep. 1015 (1832)) applying the doctrine of transferred intent to tort.   William L. Prosser,

*Transferred Intent*, 45 Tex. L. Rev. 650, 654 (1967) ("Defendant, fighting with A, swing and

unintentionally hit B.   In a short opinion he was held liable for battery".).   Prosser admits,

"Thereafter the English courts, and the English writers, have rather unaccountably been silent

about the whole matter." *Id.*

Here, Plaintiff has pleaded Defendant Wilson intended to shoot Michael Brown, Jr., and *did* shoot Michael Brown, Jr. Pet. § 56. If transferred intent in this situation were to be recognized and in the case of law enforcement, any untouched bystander could attempt to state a cause of action based on assault if that claimant alleges an apprehension of bodily harm or offensive contact on the part of the plaintiff caused by defendant's conduct when any contact is effected by an officer *on the intended suspect*.[1] Such a perversion of the doctrine of transferred intent in tort is unfounded in the scanty authority for the doctrine in the English common law, should not be adopted in Missouri, and has no place "given the present contours of tort liability in America." Vincent R. Johnson, *Transferred Intent in American Tort Law*, 87 MARQ. L. REV. 903, 937 (2004).

---

[1] Transferred intent, though rarely addressed in American jurisprudence, tends to confine the transfer of intent where the original victim of the tort is not ultimately the recipient of the harm. *See* American Ins. Co. v. Saulnier, 242 F.Supp. 257, 261 (D. Conn. 1965) ("If the defendant intends to commit an assault or a battery upon a third person, but succeeds instead in causing an unintended harmful or offensive contact with the person of the plaintiff, the latter may recover as though the act were intended to affect him. . . . The intent is said to be 'transferred' to the victim.") (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts, at 33 (2d ed. 1955)); *see also* Baska v. Scherzer, 283 Kan. 750, 156 P.3d 617 (2007) (applying transferred intent doctrine to assault and battery torts when plaintiff was injured when she stepped between two sparring defendants); Universal Calvary Church v. City of New York, No. 96CIV.4606(RPP)99CIV, 2000 WL 1538019, at *46 (S.D.N.Y. Oct. 17, 2000) ("If Plaintiff can show that the act of spraying mace was intentional, the fact that the mace made physical contact with him rather than the intended target does not foreclose his battery claim."); Hall v. McBryde, 919 P.2d 910 (Colo.App.1996) (holding that, as a matter of law, when defendant aimed and fired loaded weapon at passing car, but mistakenly hit bystander, proof of intent for tort of battery could be shown by transferring intent to hurt occupants of car to bystander); Keel v. Hainline, 331 P.2d 397 (Okla.1958) (applying transferred intent doctrine to assault and battery tort claims in which child was injured when sitting in classroom between two groups of students who were throwing erasers at each other); Morrow v. Flores, 225 S.W.2d 621 (Tex.Civ.App.1949) (applying transferred intent doctrine to civil assault and battery claims when defendant intended to shoot fleeing vandal but missed and shot plaintiff instead); Rubino v. Ramos, 226 A.D.2d 912, 913, 641 N.Y.S.2d 409, 410 (1996) (rejecting transferred intent argument where "touching" of plaintiff, an innocent bystander, was not intentional, but rather inadvertent and accidental); Moore v. City of Detroit, 340 N.W.2d 640, 643 (Mich. 1983) ("However, the doctrine of transferred intent is not applicable in a case such as the present one, where the allegedly tortious conduct was justified. In such a situation, there is no intentional tort liability but only potential negligence liability. Furthermore, this Court has also held that, where government employee's intentional tort is justified, the doctrine of governmental immunity bars a tort claim against the governmental entity.") (citing Prosser, Torts (4th ed.), § 119, pp. 112–13, n.50)); *but see* Holloway v. Wachovia Bank & Trust Co., N.A., 109 N.C.App. 403, 428 S.E.2d 453 (1993) (concluding, in case of first impression, that transferred intent doctrine applied to a civil assault claim when defendant bank agent brandished firearm at people in car, including plaintiff, during attempt to repossess car, but did not point firearm directly at plaintiff), aff'd in part and rev'd in part on other grounds, 339 N.C. 338, 452 S.E.2d 233 (1994).

14

Plaintiff's remaining allegations fall far short of stating Defendant Wilson assaulted Plaintiff. Plaintiff has attempted to state, in a conclusory manner, that Defendant Wilson assaulted Plaintiff. Plaintiff pleaded Defendant fired it "at Plaintiff Johnson and Michael Brown, Jr.," but has not alleged Defendant Wilson ever threatened to or attempted to fire his weapon at Plaintiff.

Accordingly, Plaintiff's cause of action regarding assault should be dismissed against all Defendants.

**III.    Counts III and IV regarding state claims for intentional and negligent infliction of emotional distress should be dismissed for failure to plead Plaintiff sustained emotional distress medically diagnosable and of sufficient severity as to be medically significant.**

Plaintiff purports to allege causes of action under Missouri law regarding intentional and negligent infliction of emotional distress in Counts III and IV.

In order to establish a claim for intentional infliction of emotional distress, a plaintiff must prove that 1) the defendants' conduct was extreme and outrageous, 2) the conduct was intentional or done recklessly, and 3) the conduct caused severe emotional distress that results in bodily harm. *Thornburg v. Federal Express Corp.*, 62 S.W.3d 421, 427 (Mo.App. W.D. 2001). Missouri case law recognizes that it is difficult to define acts which constitute "extreme and outrageous" conduct; however, it is clear that the defendant's conduct must be more than simply malicious or intentional. *Viehweg v. Vic Tanny Intern. Of Missouri, Inc.*, 732 S.W.2d 212, 213 (Mo.App. E.D. 1987). Defendants' conduct must be so extreme in degree, so as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community. *Id.* According to the Missouri Court of Appeals:

Intentional infliction of emotional distress requires the defendant to act intentionally or recklessly, the conduct must be extreme and outrageous, and the conduct must be the cause of extreme emotional distress that results in bodily harm. *Thomas v. Special Olympics Missouri, Inc.,* 31 S.W.3d 442, 446 (Mo.App.2000). Wrongful conduct alone cannot serve as a basis for the tort, but instead, the conduct must have been so outrageous and extreme as to go "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.;* (*quoting Gibson v. Brewer,* 952 S.W.2d 239, 249 (Mo. banc 1997)). In addition, it is essential that the conduct be intended only to cause emotional distress to the victim. *Id.*

*Conway v. St. Louis County*, 254 S.W.3d 159, 165–66 (Mo.App. E.D. 2008). The emotional distress required "must be medically diagnosable and must be of sufficient severity so as to be medically significant." *Greco v. Robinson*, 747 S.W.2d 730, 735 (Mo.App. E.D. 1988).

The elements of negligent infliction of emotional distress are:

(1) that the defendant should have realized that his conduct involved an unreasonable risk to the plaintiff, (2) that plaintiff was present at the scene of an injury producing, sudden event, and (3) that plaintiff was in the zone of danger, i.e., placed in reasonable fear of physical injury to her or his own person.

*Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 465 (Mo. banc 2001) (citing *Asaro v. Cardinal Glennon Memorial Hosp.*, 799 S.W.2d 595, 599 (Mo. banc 1990)). *See Henson v. Greyhound Lines, Inc.*, 257 S.W.3d 627, 629 (Mo. App. W.D. 2008) (internal citations and quotations omitted) (The plaintiff must prove: (1) that the defendant should have realized his conduct involved an unreasonable risk of causing the distress, and (2) that the emotional distress or mental injury is medically diagnosable and of sufficient severity to be medically significant.); *Asaro v. Cardinal Glennon Memorial Hosp.*, 799 S.W.2d 595, 599 (Mo. banc 1990) (regarding "zone of danger").

Here, Plaintiff has not alleged he suffered from emotional distress or mental injury which is medically diagnosable and of sufficient severity to be medically significant. Accordingly, Plaintiff has failed to plead each and every element of a cause of action based on the Missouri

16

claims for intentional and negligent infliction of emotional distress. Defendants are therefore entitled to dismissal on Counts III and IV.

**IV.    Claims against Defendant Jackson and Defendant Wilson in their official capacities should be dismissed as they are redundant to claims made against the City and they are entitled, with the City, to sovereign immunity.**

Plaintiffs have purportedly named Defendants Jackson and Wilson in their official capacities. Pet. ¶¶ 3–4.

    *A.    Federal official capacity claims are redundant and should be dismissed.*

A claim against an individual in his or her official capacity, where a claim has been raised against the actual entity, is redundant and should be dismissed. *See Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998). In *Artis*, the Eighth Circuit affirmed the District Court's dismissal of a public official not specifically sued in his individual capacity where the School District was already sued as the claim was "redundant." *Id.*

Here, Plaintiff's federal claims against Defendants Jackson and Wilson should be dismissed as redundant against claims against the City of Ferguson.

    *B.    State claims are barred by sovereign immunity.*

Under Missouri law, sovereign immunity is an absolute defense. *See State ex rel. Div. Of Motor Carrier & R.R. Safety v. Russell*, 91 S.W. 3d 612, 615 (Mo. 2002); *Topps v. City of Country Club Hills*, 272 S.W.3d 409, 414 (Mo. App. E.D. 2008). With the exception of a few express statutory exceptions, sovereign immunity protects public entities from any kind of tort liability. *Gregg v. City of Kansas City*, 272 S.W. 3d 353 (Mo. App. W.D. 2008); *Hummell v. St. Charles City R-3 Sch. Dist.*, 114 S.W. 3d 282, 284 (Mo. App. E.D. 2003). Sovereign immunity

generally protects public entities from liability for common law tort claims arising from its governmental functions, such as the operation and maintenance of a police force. § 537.600, R.S.Mo.; St*ate ex rel. Bd. Of Trustees of City of N. Kansas City Memorial Hospital v. Russell*, 843 S.W. 2d 353, 358 (Mo. banc 1992); *Crouch v. City of Kansas City*, 444 S.W.3d 517, 523 n.8 (Mo.App. W.D. 2014); *Nichols v. City of Kirksville*, 68 F.3d 245, 247 (8th Cir. 1995); *Ozark Silver Exch., Inc. v. City of Rolla*, 664 S.W.2d 50, 51 (Mo.App. S.D. 1984) ("The operation and maintenance of a police force is a governmental function and a municipality is immune from torts arising out of governmental functions" except for the application of statutory exceptions.).

It is well-established that sovereign immunity extends to municipalities, as well as to claims against municipalities for intentional torts that are allegedly committed by police officers. *Credit Acceptance Corp. v. Smith*, 991 S.W. 2d 720, 721 (Mo. App. E.D. 1999).

"The liability of a public entity for torts is the exception to the general rule of immunity for tort and it is incumbent upon a plaintiff who seeks to state a claim for relief to specifically allege facts establishing that an exception applies." *Boever v. Special Sch. Dist. of St. Louis Cnty.*, 296 S.W.3d 487, 491 (Mo. App. E.D. 2009); *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998); *Shifflette v. Mo. Dep't of Natural Res.*, 308 S.W.3d 331, 334 (Mo. App. W.D. 2010) ("Sovereign immunity is not an affirmative defense but is part of the plaintiff's *prima facie* case."); *Richardson v. City of St. Louis*, 293 S.W.3d 133, 137 (Mo. App. E.D. 2009). Claims against Defendants Jackson and Wilson in their official capacities are treated as claims against the City. *See State ex rel. Cravens v. Nixon*, 234 S.W.3d 442, 449 (Mo. App. W.D. 2007) ("Sovereign immunity, if not waived, bars suits against employees in their official capacity, as such suits are essentially direct claims against the state.").

Here, Plaintiff has not adequately pleaded any exception to Missouri's Sovereign Immunity Statute (R.S.Mo. § 537.600), which is a part of their prima facie case under Missouri law. Plaintiff has alleged in an insufficient and conclusory manner, "By focusing law enforcement efforts on generating revenue rather than public safety needs, Defendants Thomas Jackson and City of Ferguson were performing a proprietary function, and thus the City of Ferguson is not immune from the torts of its officials or agents." Pet. ¶¶ 63, 76, 90. This conclusion is also not linked to Defendant Wilson's conduct regarding the subject incident, and how his behavior somehow fell outside the well-established principle that the operation and maintenance of a police force is a governmental function. Therefore the City and Defendants Wilson and Jackson (in their official capacities) should be dismissed. *See, e.g., Doe A v. Special School Dist. of St. Louis County*, 637 F.Supp. 1138, 1149 (E.D. Mo. 1986); *Aiello v. St. Louis Community College Dist.*, 830 S.W.2d 556, 559 (Mo. App. E.D. 1992) (barring negligent supervision claim based on application of sovereign immunity); *Dowell v. Lincoln County*, 927 F.Supp.2d 741 (E.D. Mo. 2013) (barring negligent hiring and training claim based on application of sovereign immunity).

Accordingly, Defendants Jackson, Wilson (in their official capacities), and the City are all entitled to dismissal based on Plaintiff's failure to adequately plead an exception to sovereign immunity.

**V.     Plaintiffs' request for attorneys' fees on state claims should be dismissed for failure to plead an exception to the American Rule, for punitive damages against the City should be dismissed due to federal immunity and sovereign immunity, and for injunctive relief should be dismissed due to lack of an actual controversy, due to mootness, and due to a lack of ripeness.**

{01392893.DOCX;1}

Plaintiff has requested attorneys' fees for state claims, for the award of punitive damages against the City, and for injunctive relief. Pet. ¶ Prayer for Relief.

A.     *Plaintiff's claims for attorneys' fees based on state claims should be dismissed for failure to plead an exception to the American Rule.*

Missouri has adopted the "American Rule" as it relates to claims for attorneys' fees. *David Ranken Technical Institute v. Boykins*, 816 S.W.2d 189, 193 (Mo. banc 1991). Under the "American Rule," each litigant must bear his own attorneys' fees absent statutory authorization or contractual agreement. *Id.* Courts recognize very limited exceptions to the American Rule. *Id.* Missouri courts have referred to these exceptions as "special circumstances" or "very unusual circumstances." *Windsor Ins. Co. v. Lucas*, 24 S.W.3d 151, 156 (Mo.App. E.D. 2000). In any event, the exceptions are rare and "have been confined to limited fact situations." *Id.*

Plaintiff has not identified the existence of a contract or statute allowing for recovery of attorneys' fees in his Petition regarding his state claims.

B.     *Plaintiff's claims for punitive damages should be dismissed due to federal immunity and sovereign immunity.*

In addition, the City is absolutely immune from an award of punitive damages regarding a claim raised pursuant to 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1982).

Any claim raised in Plaintiff's Petition under Missouri law requesting punitive damages against the City are similarly barred. *See supra*, Section IV.B.; *Chappell v. City of Springfield*, 423 S.W. 2d 810, 814–15 (Mo. 1968); *see also* R.S.Mo. § 537.610.3 ("No award for damages on any claim against a public entity within the scope of sections 537.600 to 537.650, shall include punitive or exemplary damages.").

20

C.    *Plaintiff's request for a preliminary and permanent injunction should be dismissed due to a lack of an underlying violation, due to lack of an actual controversy, due to mootness, and due to a lack of ripeness.*

Plaintiff has requested that the Court order "A preliminary and permanent injunction to prevent the City of Ferguson and the Ferguson Police Department from engaging in the unconstitutional behavior of unlawful detainment, assault, and excessive use of force." Pet. ¶ Prayer for Relief.

As explained previously in this memorandum, this request for relief fails as Defendants are entitled to dismissal on all counts.

Two varieties of mootness exist: Article III mootness and prudential mootness. *Ali v. Congemi*, 419 F.3d 722, 723–24 (8th Cir. 2005); *see also Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983) (stating under the prudential mootness doctrine, "[f]ederal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies").

An exception to the mootness doctrine applies where the following two circumstances are simultaneously present: 1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and 2) there is a reasonable expectation that the same complaining party will be subject to the same action again. *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (no indication inmate was likely to be transferred back to the prison that had imposed the challenged conditions); *see also Roubideaux v. N.D. Dep't of Corr. & Rehab.*, 570 F.3d 966, 976 (8th Cir. 2009) (same). The mere possibility an individual might be subject to the same conditions again in the future are too speculative a basis to bring claims within the exception of the mootness doctrine. *See id.*; *c.f. Helling v. McKinney*, 509 U.S. 25, 35 (1993)

21

(state prisoner, incarcerated at the time of the claims, who claimed involuntary exposure to environmental tobacco smoke showed prospective relief may be appropriate on a claim regarding conditions of confinement where a plaintiff shows an unreasonable risk of serious damage to his future health).

Here, the Plaintiff has not alleged he will be subject to the same action again. Plaintiff's future harms are insufficiently pleaded and are entirely speculative. Plaintiff's claims are not justiciable, are moot, and lack ripeness. Accordingly, Defendants respectfully request that this Court dismiss Plaintiffs' request for declaratory and injunctive relief.

## CONCLUSION

Defendants respectfully pray that this Court enter an Order regarding the following:

I)      Dismissing Plaintiff's claims raised pursuant to 42 U.S.C. § 1983 for failure to sufficiently allege a seizure occurred and due to qualified immunity;

II)     Dismissing Plaintiff's claim of assault for failure to sufficiently plead each and every element as recognized under Missouri law;

III)    Dismissing Counts III and IV for failure of Plaintiff to plead each and every element of intentional and negligent infliction of emotional distress;

IV)     Alternatively, dismissing all claims against Defendant Jackson and Defendant Wilson in their official capacities as they are redundant to claims made against the City and state law claims against all Defendants due to sovereign immunity; and

V)      Alternatively, dismissing Plaintiff's request for attorney's fees on state law claims for failing to plead an exception to the American Rule, for punitive damages against the City due to federal immunity and sovereign immunity, and for

injunctive relief due to a lack of an underlying violation, due to lack of an actual controversy, due to mootness, and due to a lack of ripeness.

WHEREFORE, Defendants City of Ferguson, Missouri, former Police Chief Thomas Jackson, and former Police Officer Darren Wilson respectfully and jointly move this Court dismiss Plaintiff's claims consistent with the above for failure to state a cause of action or any claim upon which relief may be granted, and for such further relief as this Court deems just and proper.

/s/Peter J. Dunne
Peter J. Dunne  #31482
Robert T. Plunkert  #62064
PITZER SNODGRASS, P.C.
Attorneys for Defendants City of Ferguson,
Missouri, Former Police Chief Thomas Jackson,
and Former Police Officer Darren Wilson
100 South Fourth Street, Suite 400
St. Louis, Missouri 63102-1821
(314) 421-5545
(314) 421-3144 (Fax)
Email: dunne@pspclaw.com
Email: plunkert@pspclaw.com

I hereby certify that a copy of the foregoing filed electronically with the Clerk of the Court this 26th day of May, 2015 to be served by operation of the Court's electronic filing system upon the following or U.S. mail for parties not registered with CM/ECF:

Mr. Daniel R. Brown
Attorney for Plaintiff
6609 Clayton Road, Suite 1E
St. Louis, Missouri 63117
dbrown@smithbrownllc.com

Ms. Inemesit U. O'Boyle
Mr. James M. Williams
Attorneys for Plaintiff
3500 North Hullen Street
Metairie, Louisiana 70002
inem@ghwlegal.com
jmw@ghwlegal.com

/s/Peter J. Dunne

23

{01392893.DOCX;1}

24