UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DORIAN JOHNSON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No.  4:15CV00832 AGF |
| | ) | |
| CITY OF FERGUSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the joint motion of Defendants City of Ferguson, Missouri ("Ferguson"), Ferguson former Police Chief Thomas Jackson, and Ferguson former Police Officer Darren Wilson, to dismiss Plaintiff Dorian Johnson's complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons stated below, this motion shall be granted in part and denied in part.

**BACKGROUND**

In reviewing the motion to dismiss, the Court must accept Plaintiff's allegations as true and construe them in Plaintiff's favor.  The facts, *as alleged in the complaint*, are as follows.  On August 9, 2014, at approximately 12:00 noon, Plaintiff and Michael Brown, Jr., both African-American males, were "peacefully and lawfully walking down Canfield Drive in Ferguson, Missouri."  A marked police vehicle driven by Wilson stopped next to Plaintiff and Brown, and Wilson ordered the pair to "Get the f*ck on the sidewalk."

Wilson continued to drive his vehicle several yards, put it into reverse, and parked it at an

angle to block the path of Plaintiff and Brown, stopping the vehicle within inches of

Brown.  The complaint alleges that Wilson forcefully opened his door which struck

Brown, and then reached through his open window and grabbed Brown who was closer

to Wilson than was Plaintiff.  Wilson threatened to shoot his weapon.  As Brown

struggled to break free, Wilson discharged his weapon twice, striking Brown in the arm.

Fearing for his life, Plaintiff ran away from Wilson "simultaneously with Brown."

Wilson did not order Plaintiff or Brown to stop or freeze, but withdrew his weapon and

fired "at Plaintiff [and Brown]" as they fled, striking Brown several more times (and

killing him).  Plaintiff alleges that these events caused him to suffer "psychological

injury, severe emotional distress, medical expenses, lost wages . . . and other loses to be

proven at trial."  (Doc. No. 8.)

Plaintiff alleges that he and Brown were stopped (within the meaning of the

Fourth Amendment) by Wilson when his police car blocked their path, that this stop was

"without reasonable suspicion of criminal activity," and that Wilson lacked "reasonable

suspicion, or legal justification to detain Plaintiff."  (Doc. No. 8 at 7-9.)  The four-count

complaint, filed in state court on April 29, 2015, brings claims pursuant to 42 U.S.C.

§ 1983, for unconstitutional detention and use of excessive force in violation of the

Fourth and Fourteenth Amendments (Count I); and under Missouri state law, for assault

(Count II), intentional infliction of emotional distress (Count III), and in the alternative,

negligent infliction of emotional distress (Count IV).  Each claim is brought against all

Defendants, with the § 1983 claims against Wilson and Jackson in both their official and

2

individual capacities, and the state tort claims against Jackson and Ferguson under the theory of respondeat superior.

The complaint claims that Jackson and Ferguson are also liable for "fail[ing] to intervene" in the actions of Wilson, in light of their perpetration of a pattern and practice of unconstitutional and racially discriminatory policing which sanctioned police officers' use of unnecessary force and unlawful seizures, as well as Jackson's and Ferguson's prioritization of the collection of fines over ensuring public safety.  In addition to claiming that he was the direct victim of assault by Wilson, Plaintiff also asserts a claim for "transferred intent" assault, based on Wilson's shooting at Brown.

The complaint requests compensatory damages, punitive damages, attorney's fees, and an injunction preventing Ferguson and the Ferguson Police Department from engaging in unlawful detainment, assault, and excessive use of force.  The complaint further alleges that "Defendant City of Ferguson maintains a liability insurance policy and has thus waived sovereign immunity for tort liability."  (Doc. No. 8 at 3.)

In the complaint, Plaintiff quotes extensively from a report by the Department of Justice ("DOJ"), attached as an exhibit to Plaintiff's memorandum in opposition to this motion to dismiss, disclosing the findings of the DOJ's investigation of the Ferguson Police Department following the shooting death of Brown.[1]  The report notes, in pertinent part, that the Ferguson Police Department and Ferguson court system work in concert to maximize fine collection to bolster Ferguson's revenue.  *Id.* at 5-6.  The report also found

---

[1]      Plaintiff also attached the DOJ's separate investigation into the events surrounding the shooting death of Brown.

that the Ferguson Police Department routinely fails to supervise the conduct of its officers, particularly with regards to their use of force, which serves to condone officer misconduct. *Id.* at 6.

On May 26, 2015, Defendants removed the case to this Court under 28 U.S.C. § 1331, on the basis of federal question jurisdiction.

## ARGUMENTS OF THE PARTIES

### Defendants' Arguments

Defendants first argue that Count I should be dismissed as to Jackson and Wilson, in their individual capacities, on the basis of qualified immunity, because Plaintiff's allegation that he was seized by Wilson fails as he did not plead that he was struck by a bullet, and, in fact, he fled the scene after shots were fired. They assert that as a result, Plaintiff also failed adequately to plead an excessive force claim, because the Fourth Amendment only prohibits the use of excessive force during a seizure. Defendants assert that thus there was no underlying constitutional violation, and that even if there was one, "the law was not clearly established on August 9, 2014, that firing gunshots that fail to contact a suspect where the suspect flees the scene constituted a seizure for purposes of unlawful detention, excessive force, and failure to intervene." (Doc. No. 5 at 11.)

Defendants argue that Jackson cannot be held liable for failure to intervene for the further reason that there is no allegation that he was at or near the encounter at the time of the alleged seizure and use of excessive force by Wilson. Further, Defendants argue that Count I fails to state a claim against Ferguson, because municipalities may not be liable under § 1983 unless their officers committed a constitutional tort, and Plaintiff has failed

4

to show that any underlying constitutional violation occurred in this case.  Additionally, Defendants argue that the § 1983 claims against Jackson and Wilson in their official capacities should be dismissed, as they are essentially claims against Ferguson, and are therefore redundant to claims against Ferguson, and that Ferguson is immune from an award of punitive damages regarding Plaintiff's claim under § 1983.

Defendants argue that Plaintiff's request for injunctive relief should be dismissed because it is moot and/or not ripe, in that the alleged constitutional violations against Plaintiff have already occurred, and there are no allegations supporting a finding that Plaintiff will again be subject to the same actions and conditions which give rise to this action.  Defendants contend that any future harms pleaded by Plaintiff are purely speculative.

With respect to the state law claims, Defendants argue that Count II for assault fails to state a claim under Missouri law, because Plaintiff only pleaded that Wilson attempted to, and did, shoot Brown rather than Plaintiff.  Defendants argue that there can be no transferred intent in assault cases.  Defendants contend that Counts III and IV for intentional and negligent infliction of emotional distress, respectively, should be dismissed because there is no factual support in the complaint from which to infer that Plaintiff sustained "bodily harm," as required for Count III, or that his emotional distress was "medically significant," as required for Count IV.  Moreover, Defendants argue that Ferguson is entitled to sovereign immunity with respect to the state law claims, under Missouri Revised Statute § 537.600, because Plaintiff has failed adequately to plead any exception to Missouri's sovereign immunity statute.

Finally, Defendants argue that under the "American Rule," litigants each bear their own attorneys' fees, and Plaintiff has not pleaded any exception to this rule which would allow for the recovery of attorney's fees on his state law claims.

**Plaintiff's Response**

With respect to his claims under § 1983, Plaintiff argues first that Wilson's conduct toward him constituted an unlawful seizure under the Fourth and Fourteenth Amendments.  Plaintiff claims that Defendants' focus on the shots fired by Wilson as Brown and Plaintiff fled is misplaced.  Plaintiff claims that the actual seizure occurred when Wilson used his vehicle to block Plaintiff's path, forcing him to stop, and brandished his firearm, which made Plaintiff reasonably feel that he was not free to leave.  Plaintiff asserts that when he later fled from Wilson, it was not because he felt free to leave, but rather because he feared for his life.  Moreover, because Wilson lacked the requisite reasonable suspicion to make such a stop, Plaintiff contends that the seizure was unlawful.  Plaintiff notes that Defendants have not suggested that Wilson possessed a reasonable suspicion that Plaintiff was involved in criminal activity at the time he made the stop.  Plaintiff argues that the facts as pled show that Wilson used unreasonable force during the encounter, and that Defendants have not disputed this claim other than by arguing that there was no underlying wrongful seizure.

Plaintiff argues that Jackson "failed to intervene" in the sense that he and the Ferguson Police Department failed to "implement an intervention system to identify

officers who tend to use excessive force or the need for more training."[2]  Plaintiff argues that, but for Jackson's failure to implement such a system, Wilson's unlawful acts may never have occurred.

Plaintiff contests Defendants' assertion that Wilson and Jackson, in their individual capacities, are entitled to qualified immunity at the motion to dismiss stage. Plaintiff argues that he has stated a claim that Wilson's conduct violated his constitutional rights against unreasonable seizure and use of excessive force by the police.  Moreover, Plaintiff contends that it was clearly established, at the time of his encounter with Wilson, that Wilson's conduct constituted a seizure which required reasonable suspicion that Plaintiff was involved in criminal activity, and that shooting at Plaintiff as he ran away was unconstitutional.  According to Plaintiff, whether or not the force used by Wilson was actually excessive is a question for a jury to decide.

Plaintiff also argues that Jackson is not entitled to qualified immunity because Plaintiff has shown, through his use of the DOJ's investigation of the Ferguson Police Department, that such customs and practices existed in the Ferguson Police Department, and that Jackson was deliberately indifferent to them.  Finally, because Plaintiff has stated a claim that Wilson violated Plaintiff's constitutional rights, and alleged that the violations occurred under a municipal policy and practice, Plaintiff argues that he has stated a § 1983 claim against Ferguson.

Plaintiff argues that he has stated a claim for state law assault in Count II of his complaint by alleging each element of an assault under Missouri law: that Wilson fired

---

[2]    The Court interprets this as a failure to supervise claim which is discussed below.

his weapon at Plaintiff and Brown in an attempt to cause imminent bodily harm, or apprehension of such, and that Wilson was successful in creating such apprehension in Plaintiff.  With respect to Counts III and IV, Plaintiff maintains that the allegations in his complaint are sufficient to state claims for infliction of emotional distress, under Missouri law.  Plaintiff cites cases for the proposition that no medical testimony is required to prove a claim for either negligent or intentional infliction of emotional distress, and that the allegations that he suffered "psychological injury" and "severe emotional distress" are enough to raise the inference that his emotional distress resulted in bodily injury and was medically significant.  Plaintiff contends that evidence on these points will be introduced at trial and that dismissing these claims at this stage in the proceedings is improper.

Plaintiff also cites law for the proposition that he has stated a claim for negligent infliction of emotional distress in a bystander action, as he alleges that Wilson should have known that firing his weapon would endanger Plaintiff, Plaintiff was within the "zone of danger" of Wilson's shots, and Wilson's actions caused Plaintiff to fear for his life.

Plaintiff argues that redundancy is not a persuasive basis for a Rule 12(b)(6) dismissal, and that the Court should not dismiss his official capacity claims against Jackson and Wilson for this reason.

Plaintiff next argues that Ferguson is not entitled to dismissal of the state law claims against it on the grounds of sovereign immunity, because Missouri's sovereign immunity statute protects public entities from state tort claims only when they are involved in governmental functions, but not when they are involved in proprietary

functions.  Although police functions are generally governmental in nature, Plaintiff argues that the main focus of the Ferguson Police Department was not public safety, but generating revenue for Ferguson through aggressive fine enforcement.  Plaintiff cites to the DOJ report for this proposition, and argues that he has at least stated a claim that the challenged actions of the Ferguson Police Department during the relevant time period were proprietary, not governmental.

Additionally, Plaintiff notes that he specifically pleaded in his complaint that Ferguson maintains a liability insurance policy, which operates as a waiver of sovereign immunity for tort liability.

With respect to the injunctive relief he requests, Plaintiff first argues that his request is not moot because there is an actual case or controversy, in that Ferguson is engaged in an ongoing pattern and practice of racial bias and unconstitutional policing, which was the driving force behind the deprivations of Plaintiff's rights.  Plaintiff argues that it is Defendants who have the burden of proving mootness, and that in the light of Plaintiff's allegations of Ferguson's continuing constitutional violations, they have not met this burden.  Plaintiff also argues that his claim is ripe, in that it is based on events that are likely to continue to occur without judicial intervention.

Finally, Plaintiff argues that his claims for attorneys' fees and punitive damages should not be dismissed entirely.  Plaintiff argues that 23 U.S.C. § 1988 authorizes the recovery of attorney's fees in § 1983 suits, and that his claims for fees are thus proper with respect to Count I.  Plaintiff also asks the Court not to dismiss his requests for attorneys' fees in the remaining counts, as intentional misconduct or other special

9

circumstances may be revealed during the course of litigation, entitling him to attorney's

fees under Missouri law.  Plaintiff admits that he is not entitled to punitive damages

against Ferguson, and clarifies that his request for punitive damages is only against

Wilson and Jackson in their individual capacities.

**Defendants' Reply**

In their reply, Defendants urge the Court to ignore the copies of the DOJ's reports

on the investigations into the shooting death of Brown, and into the Ferguson Police

Department generally. Defendants argue that courts must generally ignore materials

outside the pleadings when considering a motion to dismiss under Rule 12(b)(6).

Defendants argue that the Court could only consider these materials if it took judicial

notice of them, something Defendants argue is improper because the investigations relied

on unsworn hearsay statements of several unidentified individuals, were issued without

any fact-finding hearing or opportunity for Ferguson or the Ferguson Police Department

to respond, and were prepared in anticipation of litigation surrounding the shooting death

of Brown.  Additionally, Defendants argue that even if the Court were to consider the

DOJ reports, the documents do not support Plaintiff's allegations and arguments about

what occurred during his encounter with Wilson.

Defendants also argue that Plaintiff has failed to plead an exception or waiver to

the doctrine of sovereign immunity.  Defendants contend that police conduct is

governmental in nature, and that even aggressive enforcement of fines is within the realm

of maintaining the public safety.  Additionally, Defendants argue that Plaintiff's

allegation that "Defendant City of Ferguson maintains a liability policy and has thus

waived sovereign immunity for tort liability" is insufficient, as a municipality does not waive immunity by purchasing a policy which exempts coverage for liability barred by sovereign immunity.  Defendants cite Missouri cases for the proposition that, because Plaintiff failed to allege that Ferguson's insurance policy covers the claims at issue in this case, he has not sufficiently pled a waiver to sovereign immunity.  Therefore, Defendants argue that the state law claims against Ferguson should be dismissed.

## DISCUSSION

To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, when accepted as true, states "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster.  *Id.*  The reviewing court must accept the plaintiff's factual allegations as true and construe them in the plaintiff's favor, but is not required to accept the legal conclusions the plaintiff draws from the facts alleged.  *Id.*; *Retro Television Network, Inc. v. Luken Comm'cns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012).

## Claims under § 1983

"Section 1983 imposes liability for certain actions taken under color of law that deprive a person of a right secured by the Constitution and laws of the United States." *Dossett v. First State Bank*, 399 F.3d 940, 947 (8th Cir. 2005) (citation omitted).

**1.** *Did a Seizure Occur?*

The Fourth Amendment to the United States Constitution forbids the unreasonable seizure of persons.  U.S. Const. Amend. IV.  This prohibition applies to the states through the Fourteenth Amendment.  "In determining whether a person has been seized for Fourth Amendment purposes, the relevant question is whether, in view of the totality of circumstances surrounding the incident, a reasonable person would have believed he was free to leave."  *United States v. Johnson*, 326 F.3d 1018, 1021 (8th Cir. 2003).  "So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required."  *United States v. Hayden*, 759 F.3d 842, 846 (8th Cir.) (citation omitted), *cert. denied*, 135 S. Ct. 691 (2014).  Factors considered by courts may include the presence of several officers, a display of a weapon by an officer, physical touching of the person, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.  *United States v. Flores-Sandoval*, 474 F.3d 1142, 1145 (8th Cir. 2007).  If an officer, "by means of physical force or show of authority" has in some way stopped or otherwise restrained the liberty of an individual, a seizure has occurred.  *United States v. Vera*, 457 F.3d 831, 835 (8th Cir. 2006).  "To be a violation of the Fourth Amendment, the restraint in liberty must be effectuated *through means intentionally applied*."  *McCoy v. City of Monticello*, 342 F.3d 842, 847 (8th Cir. 2003) (citation omitted).

Here, upon consideration of the totality of the circumstances, the Court believes that a close question is presented as to whether a seizure occurred, especially given that Plaintiff fled from the scene.  Much depends on the timeframe within which events

12

unfolded.  Taking the allegations in the complaint as true for the purposes of the present motion, Wilson reversed his marked police vehicle and stopped it inches from Plaintiff and Brown, blocking their path, after yelling at them to get on the sidewalk.  Wilson drew his weapon, and shot out of his window, hitting Brown.  Under these circumstances, depending on the timing of these events, the Court cannot say that as a matter of law, that Plaintiff was not seized.  Thus, the Court concludes that Plaintiff has stated a claim that Wilson seized him, for Fourth Amendment purposes.  *Cf. Hayden*, 759 F.3d at 846 (holding that the defendant was not seized, for Fourth Amendment purposes, when a police officer shined a flashlight on him and said "Police," the officer and another officer pulled their vehicle alongside defendant and his companion, who were standing near a vacant house; the officers did not block the ability of the defendant and his companion to cross the street, did not touch the men, and did not display weapons).

### 2. Was the Seizure Unreasonable?

Even where a Fourth Amendment seizure has occurred, a plaintiff only states a claim under § 1983 if the seizure was unreasonable.  A law enforcement officer may detain a person for investigation without probable cause for arrest if the officer "has a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Maltais*, 403 F.3d 550, 554 (8th Cir. 2005) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).  "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances."  *Id.* (citations omitted).

At some later stage of the case, Defendants may be able to demonstrate the reasonableness of the seizure (assuming one occurred), however, in their motion to dismiss, Defendants did not dispute the reasonableness of the seizure, but merely assert that no seizure occurred.  Construing all facts in favor of Plaintiff, Plaintiff has sufficiently alleged that the seizure by Wilson was unreasonable, and has thus stated a claim under § 1983.  The Court will deny Defendants' motion to dismiss with respect to Plaintiff's claims for unconstitutional seizure.

### 3. Excessive Force

"A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's reasonableness standard." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).   In determining whether the force used to effectuate a particular seizure is "reasonable" under the Fourth Amendment, courts consider the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officer or others, and whether he was actively resisting arrest or attempting to evade arrest by flight. *Schoettle v. Jefferson Cnty.*, 788 F.3d 855, 859 (8th Cir. 2015).[3]

---

[3]   In addition, there may be a requirement of "actual injury" which results from the use of force, though this injury may be *de minimus.*  *Davis v. White*, 794 F.3d 1008, 1012 (8th Cir. 2015); *Chambers v. Pennycook*, 641 F.3d 898, 905-06 (8th Cir. 2011).   Courts do not equate "actual" injury" in this context with physical, as opposed to mental, injury. *See Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1208 (10th Cir. 2008) ("We have consistently rejected a bright-line rule requiring plaintiffs to demonstrate physical injury when bringing excessive force claims."); *Anderson v. Willis*, 917 F. Supp. 2d 1190, 1198 (D. Kan. 2013).  Although not directly addressing this matter, in *Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995), the Eighth Circuit held that one of the plaintiffs met the actual injury requirement due to experiencing post traumatic stress disorder.

Whether an officer's use of force is reasonable is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Plumhoff*, 134 S. Ct. at 2020 (citation omitted).  Thus, courts must "allow for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Id.* (citation omitted); *see also Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.").

Here, it is possible that, at a later stage in this case, Wilson will establish the reasonableness of his shooting at Plaintiff.  However, for the purposes of this motion, and construing all facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has stated a claim of use of excessive force by Wilson.

### 4. Supervisory Liability

Supervisory personnel are not liable under § 1983 for the actions of their subordinates, "absent a showing of direct responsibility for the improper action or personal involvement of the officer being sued."  *Burke v. Mo. Dep't of Corr.*, No. 4:08CV2000 CDP, 2009 WL 1210625, at *1 (E.D. Mo. Apr. 30, 2009) (citations omitted).  However, a supervisor may be found liable for failure to supervise or control his subordinates where the plaintiff shows the supervisor to have been deliberately indifferent or to have tacitly authorized the offensive acts by failing to take remedial steps

following notice of a pattern of such acts by subordinates.  *Id.*  Mere negligence of the supervisor is insufficient; he "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see."  *Kahle v. Leonard*, 477 F.3d 544, 551 (8th Cir. 2007) (citation omitted); *see also Hahn v. McLey*, 737 F.2d 771, 773 (8th Cir. 1984) ("[A] supervisor may be liable for the acts of a subordinate if injury is inflicted upon the plaintiff as a result of a breach of the supervisor's duty to train, supervise, or control the actions of subordinates.").

Here, Plaintiff has alleged that Wilson's unreasonable detention of, and use of excessive force against, Plaintiff (and Brown) was not an isolated incident, but one in a long string of similar actions by the Ferguson Police Department, largely against members of the African-American community in Ferguson.  Plaintiff alleges that Jackson deliberately turned a blind eye to this pattern of constitutional violations by "do[ing] little to no investigation" and "rarely" reviewing reports on his officers' conduct.  Plaintiff claims that Jackson's failure to properly train and supervise his officers condoned a pattern and practice of unlawful detainment and use of excessive force by the Ferguson Police Department, and had the effect of causing the deprivations of Plaintiff's constitutional rights.

These allegations, and the Court's finding above that Plaintiff stated claims for unreasonable seizure and excessive force, are sufficient to state a claim against Jackson for supervisor liability under § 1983.  *See Rohrbough v. Hall*, No. 4:07CV00996 ERW, 2008 WL 4722742, at *13 (E.D. Mo. Oct. 23, 2008) (denying motion to dismiss § 1983 claim against a supervisory board, finding that the defendants' alleged failure to inquire

16

into uses of excessive force were "tantamount to turning 'a blind eye,'" and stated a claim for deliberate indifference).  Therefore, the Court will deny Defendants' motion to dismiss Plaintiff's § 1983 claims against Jackson, in his individual capacity.

### 5. Qualified Immunity

As noted above, Defendants argue that the § 1983 claims against Jackson and Wilson, in their individual capacities, should be dismissed on the basis of qualified immunity.  Under the doctrine of qualified immunity, "a court must dismiss a complaint against a government official in his individual capacity that fails to state a claim for violation of clearly established statutory or constitutional rights of which a reasonable person would have known." *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (citation omitted).   "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation omitted).

> When a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts.

*S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015).

Because qualified immunity is an affirmative defense, in the context of a motion to dismiss under Rule 12(b)(6), the motion will only be granted when the immunity is established "on the face of the complaint." *Weaver v. Clarke*, 45 F.3d 1253, 1255 (8th Cir. 1995).  At this stage of the proceedings, a court will consider whether the plaintiff

has "stated a plausible claim for violation of a constitutional or statutory right and whether the right was clearly established at the time of the alleged infraction." *Hager*, 735 F.3d at 1013.

Here, as explained above, Plaintiff has stated a plausible claim that a constitutional violation occurred as a result of Wilson detaining him without reasonable suspicion, and that Plaintiff was subjected to unconstitutional excessive force by Wilson.  In addition, viewed in the light most favorable to Plaintiff, the facts alleged in the complaint support a plausible claim that a reasonable officer in the situation Wilson confronted would have known that his actions violated clearly established federal law.  *See, e.g., A.H. v. St. Louis Cnty.*, No. 4:14-CV-2069 CEJ, 2015 WL 4426234, at *3 (E.D. Mo. July 17, 2015) (denying motion to dismiss on qualified immunity grounds where facts alleged in the complaint supported a plausible claim that the defendants knew a detainee was suicidal and their actions in response to that known risk were unreasonable).

Finally, Plaintiff has stated a § 1983 claim that the constitutional deprivations he allegedly suffered were due, at least in part, to Jackson's failure to train and supervise Ferguson Police Department officers, and that a reasonable supervisor in Jackson's place would have known that his actions were unlawful in light of clearly established law and information possessed by Jackson at the time.  *See Wever v. Lincoln Cnty.*, 388 F.3d 601, 608 (8th Cir. 2004) (affirming the denial of a supervisor's motion for summary judgment, on the basis of qualified immunity, with respect to a failure to train claim).  Accordingly, Defendants' motion to dismiss the individual capacity § 1983 claims against Wilson and Jackson on the basis of qualified immunity will be denied.

### *6. Municipal Liability*

A municipality may not be liable under § 1983 unless a constitutional violation has been committed pursuant to an official custom, policy, or practice. *Johnson v. Blaukat*, 453 F.3d 1108, 1114 (8th Cir. 2006). This custom, policy, or practice must have been the "moving force" behind the violation. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 820 (8th Cir. 2012). Where a claim is based upon a municipality's failure to adopt or follow a needed policy or practice, the plaintiff "must show that his alleged injury was caused by municipal employees engaging in a widespread and persistent pattern of unconstitutional misconduct that municipal policymakers were either deliberately indifferent to or tacitly authorized." *Davis v. White*, 794 F.3d 1008, 1014 (8th Cir. 2015) (citation omitted).

As discussed above, Plaintiff has alleged that Ferguson had a custom of failing to train and supervise officers, and of failing to investigate claims of unconstitutional seizures and excessive force, which amounted to deliberate indifference. Plaintiff has pled that these customs and policies in turn caused him to suffer constitutional violations during his encounter with Wilson. The Court believes that Plaintiff's allegations in this regard are sufficient to withstand a motion to dismiss. Therefore, the Court will deny Defendants' motion to dismiss Plaintiff's § 1983 claims against Ferguson.

### *7. Redundant Claims*

As Defendants correctly argue, a § 1983 suit against an officer in his official capacity is functionally equivalent to a suit against the employing governmental entity; thus, the Court will dismiss without prejudice the § 1983 claims against Jackson and Wilson, in their official capacities, as these claims are redundant to the § 1983 claims

asserted against Ferguson.  *See Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257

(8th Cir. 2010) (dismissing § 1983 claims against public officials in their official

capacities as redundant to § 1983 claims made against the governmental entity); *Brown v.

City of Ferguson*, No. 4:15CV00831 ERW, 2015 WL 4393960, at *1 (E.D. Mo. July 16,

2015) (same).

**State Tort Claims**

   When deciding state law claims, a federal court must attempt to predict what the state

supreme court would decide if it were to address the issue; in pursuing such endeavor, the

federal court may consider relevant state appellate court precedent, analogous decisions,

considered dicta, and any other reliable data.  *Raines v. Safeco Ins. Co. of Am.*, 637 F.3d

872, 875 (8th Cir. 2011).

   *1. Assault*

   Under Missouri law, an assault is "any unlawful offer or attempt to injure another

with the apparent present ability to effectuate the attempt under circumstances creating a

fear of imminent peril."  *Devitre v. Orthopedic Ctr. of St. Louis, LLC*, 349 S.W.3d 327,

335 (Mo. 2011) (citation omitted).  To state a claim, a plaintiff must allege: "(1)

defendant's intent to cause bodily harm or offensive contact, or apprehension of either;

(2) conduct of the defendant indicating such intent[;] and (3) apprehension of bodily

harm or offensive contact on the part of the plaintiff caused by defendant's conduct."  *Id.*

   Defendants' only argument here is that Plaintiff failed to state a claim that he (as

opposed to Brown) was assaulted by Wilson, and that Count II should therefore be

dismissed.  However, the Court concludes that Plaintiff's allegations satisfy the pleading requirement for all the elements of an assault against him.

### 2. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress under Missouri law, a plaintiff must allege that "(1) the defendant acted in an intentional or reckless manner; (2) the defendant's conduct [was] extreme or outrageous; and (3) the defendant's conduct caused severe emotional distress that results in bodily harm." *Geran v. Xerox Educ. Servs., Inc.*, 469 S.W.3d 459, 468 (Mo. Ct. App. 2015).   "Additionally, the plaintiff must demonstrate that the sole intent in acting was to cause emotional distress." *Id*. Defendants' only challenge to this claim is that the injury alleged by Plaintiff is not sufficient as a matter of law.  The Court agrees with Plaintiff that he has alleged sufficient injury (psychological injury, severe emotional distress, and medical expenses) to survive a motion to dismiss this claim.  *See State ex rel. Dean v. Cunningham*, 182 S.W.3d 561, 566 n.4 (Mo. 2006) (explaining that "medically documented damages need not be proven" for intentional infliction of emotional distress).

### 3. Negligent Infliction of Emotional Distress

In Missouri, the elements of a claim for negligent infliction of emotional distress are "(1) a legal duty of the defendant to protect the plaintiff from injury, (2) breach of the duty, (3) proximate cause, and (4) injury to the plaintiff." *Henson v. Greyhound Lines, Inc*., 257 S.W.3d 627, 629 (Mo. Ct. App. 2008).  In addition, to recover damages, a plaintiff must show "(1) that the defendant should have realized that his conduct involved an unreasonable risk of causing the distress, and (2) that the emotional distress or mental

injury is medically diagnosable and of sufficient severity so as to be medically significant." *Id.* Alternatively, a plaintiff may state a claim as a bystander for negligent infliction of emotional distress, by showing: (1) that the defendant should have realized that his conduct involved an unreasonable risk to the plaintiff, (2) plaintiff was present at the scene of an injury-producing, sudden event, (3) plaintiff was in the zone of danger, i.e., placed in reasonable fear of physical injury to her or his own person, and (4) the same emotional distress at in a direct-victim case. *Jarrett v. Jones*, 258 S.W.3d 442, 445-48 (Mo. 2008).

Here, the Court concludes that Plaintiff has failed to state a claim for negligent infliction of emotional distress as either a direct victim or bystander. Plaintiff has not alleged that he sought or received any medical treatment for his emotional distress, nor does he specify what medically diagnosable condition he suffered as a result of Wilson's actions. *See St. Anthony's Med. Ctr. v. H.S.H.*, 974 S.W.2d 606, 610-12 (Mo. Ct. App. 1998) (holding that the plaintiff's allegations failed to plead an action for negligent infliction of emotional distress, where the plaintiff claimed he had suffered "severe emotional distress" and was "caused to incur expenses for psychiatric and psychological treatment, counseling, and medications," because they did not contain facts from which to infer medically diagnosable and medically significant emotional distress); *see also Brittingham v. McConnell*, No. 2:13CV00089 ERW, 2014 WL 4912184, at *7 (E.D. Mo. Sept. 30, 2014); *Franklin v. Pinnacle Ent., Inc.*, No. 4:12–CV–307 CAS, 2012 WL 6870447, at *13 (E.D. Mo. Aug. 9, 2012).

### 4. *Sovereign Immunity*

As noted above, Defendants invoke Missouri's sovereign immunity statute, arguing that it bars Plaintiff's state law tort claims against Ferguson and its officials. Missouri Revised Statute § 537.600 provides that public entities enjoy sovereign immunity as it existed at common law, unless immunity is waived, abrogated, or modified by statute. *Richardson v. City of St. Louis*, 293 S.W.3d 133, 136 (E.D. Mo. 2009). Under this doctrine, municipalities are entitled to sovereign immunity when they are engaged in "governmental" functions – ones performed for the common good of all – but not when engaged in "proprietary" functions – those performed for the special benefit or profit of the municipality acting as a corporate entity. *Jungerman v. City of Raytown*, 925 S.W.2d 202, 204 (Mo. 1996), *abrogated on other grounds by Southers v. City of Farmington*, 263 S.W.3d 603 (Mo. 2008). If sovereign immunity applies, it does not need to be pled as an affirmative defense, and it is the plaintiff's pleading burden to show that the defendant has waived such immunity, or that a statutory exception to immunity applies. *Richardson*, 293 S.W.3d at 137.

A public entity may waive sovereign immunity by purchasing an insurance policy covering tort claims. Mo. Rev. Stat. §§ 71.185 & 537.610.1. Whether sovereign immunity is waived in a particular case depends on whether the plaintiff's claim falls within the purposes covered by the defendant's policy. *Epps v. City of Pine Lawn*, 353 F.3d 588, 594 (8th Cir. 2003) (citing *Casey v. Chung*, 989 S.W.2d 592, 593 (Mo. Ct. App. 1998)).

While it is true, as Plaintiff argues, that municipalities are not entitled to sovereign immunity for their proprietary functions, the conduct of police officers is generally construed as governmental in nature.  *See Jungerman*, 925 S.W.2d at 204-05; *St. John Bank & Tr. Co. v. City of St. John*, 679 S.W.2d 399, 401 (Mo. Ct. App. 1984) ("[T]he operation and supervision of a police department . . . constitute the exercise of a governmental function.").  Plaintiff relies on the DOJ's report for the proposition that Ferguson and the Ferguson Police Department were more concerned with using officers as means to collect fines than as protectors of public safety, and argues that the actions of Wilson were thus proprietary in nature.  However, even construing the facts in the light most favorable to Plaintiff, Plaintiff's allegations only speak to the general motivations of Ferguson and the Ferguson Police Department, and do nothing to show that the specific acts of Wilson on the date in question constituted a proprietary function.

Further, the Court finds that Plaintiff has failed to meet his pleading burden to show that Ferguson's liability insurance policy acts as a waiver of sovereign immunity in this case.  While Plaintiff does plead that Ferguson purchased a liability insurance policy, he has failed to allege that this policy applies to the tort claims at issue in the case, which he must do.  *See Epps*, 353 F.3d at 594 ("Because a public entity's liability for torts is the exception to the general rule of sovereign immunity, a plaintiff must specifically plead facts demonstrating that the claim is within this exception to sovereign immunity."); *Martin v. Bd. of Police Comm'rs of St. Louis City*, No. 4:07-CV-1831 JCH, 2008 WL 1732925, at *2 (E.D. Mo. Apr. 10, 2008) (same).  However, rather than dismiss Plaintiff's state law claims with respect to Ferguson, the Court will allow Plaintiff to

amend his complaint to plead relevant facts, as appropriate, alleging that Ferguson's insurance policy covers Plaintiff's tort claims.  Of course, Plaintiff must have a good faith basis under Federal Rule of Civil Procedure Rule 11 for any such amended allegations.

**Injunctive Relief**

A claim for injunctive relief is properly dismissed as moot "when the challenged conduct ceases and there is no reasonable expectation that the wrong will be repeated." *Roubideaux v. N.D. Dep't of Corr. & Rehab.*, 570 F.3d 966, 976 (8th Cir. 2009) (citation omitted).  In *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983), a case for damages and injunctive relief brought by a plaintiff who was choked into unconsciousness by the police, the Supreme Court explained as follows, in holding that the plaintiff did not present a justiciable claim for injunctive relief:

> That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part.

*Id*. at 105.

The "heavy" burden of proving mootness falls on the party asserting that the case is moot.  *Kennedy Building Assocs. v. Viacom, Inc.*, 375 F.3d 731, 745 (8th Cir. 2004) (citation omitted); *see also Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.*, 528 U.S. 167, 189 (2000) (holding that a defendant claiming that a case is moot "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.")  Here, however, the complaint is

devoid of any allegations whatsoever that Plaintiff faces a real and immediate threat that he will again be detained by the police without justification or be subject to excessive force.  Accordingly, his claim for injunctive relief will be denied.

**Attorney's Fees and Punitive Damages**

### *1. Attorney's Fees*

If Plaintiff prevails on any of his § 1983 claims, he will be entitled to attorney's fees under 42 U.S.C. § 1988.  With respect to his state tort claims, Missouri follows the American Rule, which provides that, "absent statutory authorization or contractual agreement, with few exceptions, each litigant must bear his own attorney's fee."  *Henry v. Farmers Ins. Co.*, 444 S.W.3d 471, 478 (Mo. Ct. App. 2014).  The special circumstances exception "is narrow and must be construed strictly."  *Goralnik v. United Fire & Cas. Co.*, 240 S.W.3d 203, 210 (Mo. Ct. App. 2007).  "Missouri courts have construed unusual circumstances to mean an unusual type of case or unusually complicated litigation."  *Wyper v. Camden Cnty.*, 160 S.W.3d 850, 854 (Mo. Ct. App. 2005) (citation omitted).  This Court does not believe that the Missouri Supreme Court would find that this case qualifies for abrogation of the American Rule.  Accordingly, Plaintiff's request for attorney's fees with respect to his state law claims will be stricken.

### *2. Punitive Damages*

Municipalities are immune from awards of punitive damages regarding claims raised under § 1983.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1982).  Accordingly, the Court will strike Plaintiff's requests for punitive damages with respect to Ferguson.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the joint motion (Doc. No. 4) of Defendants City of Ferguson, Missouri, Police Chief Thomas Jackson, and Officer Darren Wilson (Doc. No. 4) to dismiss Plaintiff Dorian Jackson's complaint is **DENIED** in part and **GRANTED** in part, as follows:

The motion is denied with respect to Counts I, II, and III of the complaint, except that the claims against Defendants Thomas Jackson and Darren Wilson in their official capacities, in Count I, are dismissed as redundant.

The motion is granted with respect to Count IV of the complaint.

The motion is granted with respect to Plaintiff's request for injunctive relief.

Plaintiff's request for attorneys' fees is stricken with respect to Counts II.

Plaintiff's request for punitive damages is stricken with respect to Defendant the City of Ferguson.

**IT IS FURTHER ORDERED** that on or before March 29, 2016, Plaintiff may amend his complaint to plead relevant facts, as appropriate, alleging that the City of Ferguson's insurance policy covers Plaintiff's state law tort claims.  Failure to do so may result in the dismissal of Counts II and IV of the complaint against the City of Ferguson on the basis of sovereign immunity.

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRCIT JUDGE

Dated this a 15th day of March, 2016

27