# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-1697
_____

Dorian Johnson

*Plaintiff - Appellee*

v.

City of Ferguson, Missouri; Thomas Jackson; Darren Wilson

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 12, 2017
Filed: July 25, 2017 (Corrected July 31, 2017)

_____

Before WOLLMAN, MURPHY, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

    Dorian Johnson sued Officer Darren Wilson, Police Chief Thomas Jackson, and the City of Ferguson, Missouri, for constitutional violations resulting from an encounter between Officer Wilson and Johnson. The district court[1] denied

_____

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

Defendants' motion to dismiss based on qualified immunity. Defendants appeal, and we affirm.

I.

Because this matter comes before us as an appeal from the denial of a motion to dismiss, we set forth the facts as alleged in the complaint. Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1013 (8th Cir. 2013). On August 9, 2014, Johnson and Michael Brown, Jr., were walking down Canfield Drive in Ferguson, Missouri. Officer Wilson approached both men in his police car and told them to "Get the f*ck on the sidewalk." Officer Wilson drove past the two men and then reversed his car, parking so as to block Johnson and Brown's path. Officer Wilson opened his door, striking Brown, and then grabbed Brown and threatened to shoot his gun. While Brown struggled to break free, Officer Wilson discharged his gun twice, striking Brown in the arm. At all times during this encounter, Johnson was standing next to Brown.

After Officer Wilson shot Brown in the arm, Brown and Johnson ran away from Officer Wilson. Officer Wilson did not order Brown and Johnson to "stop" or "freeze." Rather, Officer Wilson fired his service weapon at the two men, striking Brown several times and killing him.

Johnson filed this cause of action pursuant to 42 U.S.C. § 1983, naming Officer Wilson, the City of Ferguson, and Chief Jackson as defendants. Johnson alleges that Officer Wilson's actions constituted an unlawful seizure and use of excessive force, in violation of his rights under the Fourth and Fourteenth Amendments. Further, Johnson alleges that the City of Ferguson and Chief Jackson engaged in policies that resulted in the violation of Johnson's civil rights, including failure to train and supervise officers and condoning unconstitutional law-enforcement practices. Johnson also brought claims under Missouri state law for assault, intentional

infliction of emotional distress, and, in the alternative, negligent infliction of emotional distress.

Defendants moved to dismiss Johnson's complaint for failure to state a claim. Officer Wilson and Chief Jackson claim they are entitled to qualified immunity. The City of Ferguson claims it cannot be liable because Johnson failed to show that a constitutional violation occurred. The district court denied qualified immunity to Officer Wilson and Chief Jackson. The district court also denied the motion to dismiss the claims against the City of Ferguson. Defendants appeal.

II.

A.  Qualified Immunity

"[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). Defendants challenge the sufficiency of Johnson's pleadings to state a claim pursuant to § 1983. This is an issue of law over which we have jurisdiction. See Hager, 735 F.3d at 1013.

We review the denial of a motion to dismiss on the basis of qualified immunity de novo. Id. A complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "Courts must accept a plaintiff's factual allegations as true but need not accept a plaintiff's legal conclusions." Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). "[D]efendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity 'must show that they are entitled to qualified immunity on the face of the complaint.'" Carter v. Huterson, 831

F.3d 1104, 1107 (8th Cir. 2016) (quoting Bradford v. Huckabee, 394 F.3d 1012, 1015 (8th Cir. 2005)).

Qualified immunity shields officers from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "The determination of whether an officer is entitled to qualified immunity requires consideration of the 'objective legal reasonableness' of the officer's conduct in light of the information he possessed at the time of the alleged violation." Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001) (quoting Harlow, 457 U.S. at 819). "Qualified immunity involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Mitchell v. Shearrer, 729 F.3d 1070, 1074 (8th Cir. 2013); see Pearson v. Callahan, 555 U.S. 223, 236 (2009) (holding that courts have discretion to determine which prong to address first).

1. Constitutional Violation

a. Seizure

The crux of the motion to dismiss and this resulting appeal centers on the issue of whether there was a seizure. Johnson concedes that if there was no seizure virtually all of his claims fall away. Conversely, if there was a seizure, the Defendants make little argument that the force used was not unreasonable. Thus, we turn to that issue first.

The § 1983 claim against Officer Wilson alleges that Johnson was unlawfully detained and subjected to excessive force in violation of the Fourth and Fourteenth Amendments. The Fourth Amendment prohibits unreasonable seizures of persons.

-4-

U.S. Const. amend. IV. Whether a person has been seized turns on whether, "in view of the totality of circumstances surrounding the incident, a reasonable person would have believed he was free to leave." United States v. Johnson, 326 F.3d 1018, 1021 (8th Cir. 2003). Courts consider "the presence of several officers, a display of a weapon by an officer, physical touching of the person, or the 'use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" United States v. Flores-Sandoval, 474 F.3d 1142, 1145 (8th Cir. 2007) (quoting United States v. Hathcock, 103 F.3d 715, 718–19 (8th Cir. 1997)). Further, "[a] seizure occurs when the officer, 'by means of physical force or show of authority, has in some way restrained the liberty' of a suspect." Id. (quoting United States v. Barry, 394 F.3d 1070, 1074 (8th Cir. 2005)).

Johnson alleges he was seized when Officer Wilson yelled at Johnson and Brown to "Get the f*ck on the sidewalk" and then parked his police car so as to block their path. Johnson argues that this constitutes a show of authority. Courts apply an objective test to determine whether there was a show of authority: "not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." California v. Hodari D., 499 U.S. 621, 628 (1991).

Officer Wilson argues that his actions did not constitute a show of authority because Johnson "did not allege he was blocked by the angle of the cruiser, just that the path in one direction on an open road was blocked." However, the fact that Johnson *could* have walked around Officer Wilson's car is not dispositive as to whether there was a seizure. In Brower v. County of Inyo, the Supreme Court stated:

> We think it enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result. It was enough . . . that, according to the allegations of the complaint, [the suspect] was meant to be stopped by the physical obstacle of the roadblock—and that he was so stopped.

-5-

489 U.S. 593, 599 (1989). The Court further stated: "[A] Fourth Amendment seizure . . . occur[s] . . . only when there is a governmental termination of freedom of movement *through means intentionally applied*." Id. at 596–97. Finally, the Court stated that "a roadblock is not just a significant show of authority to induce a voluntary stop, but is designed to produce a stop by physical impact if voluntary compliance does not occur." Id. at 598.

In this case, Johnson's complaint alleged that Officer Wilson stopped his car at an angle, directly in front of Johnson and Brown, so as to block their path after yelling at them to "Get the f*ck on the sidewalk." That is enough to constitute a show of authority for Fourth Amendment purposes.

Defendants argue that, even assuming Officer Wilson's actions constitute a show of authority, there was no seizure because Johnson did not submit to Officer Wilson's authority. To constitute a seizure, there must be "*either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority." Hodari D., 499 U.S. at 626. Defendants claim that, although Johnson stopped when Officer Wilson parked in front of him, Johnson did not actually submit to Officer Wilson's authority before fleeing. Defendants characterize Johnson's stopping as "inaction" while Officer Wilson and Brown were involved in an altercation.

The fact that Johnson was not involved in the altercation does not affect our analysis of whether Johnson was seized. First, it is enough that Johnson actually stopped when Officer Wilson blocked his path. See Brower, 489 U.S. at 599. While Johnson was not involved in the altercation, Johnson's situation is similar to that of a passenger in a car that has been pulled over. In Brendlin v. California, the Supreme Court held that a passenger in a car that has been pulled over is seized for Fourth Amendment purposes. 551 U.S. 249, 256–57 (2007). The Court explained, "any reasonable passenger would have understood the police officers to be exercising

control to the point that no one in the car was free to depart without police permission." Id. at 257.  The Court reasoned that "[a] traffic stop necessarily curtails the travel a passenger has chosen just as much as it halts the driver." Id.  Finally, the Court stated that "the issue is whether a reasonable passenger would have perceived that the show of authority was at least partly directed at him, and that he was thus not free to ignore the police presence and go about his business." Id. at 261.

Just as a passenger would understand that no one in the car is free to leave during a traffic stop, one of two pedestrians stopped by a single police roadblock would understand that he was not free to leave, even if the officer only directly engaged with the other pedestrian.  Officer Wilson's show of authority did not single out Brown as he walked alongside Johnson.  Further, as the Court noted, "what may amount to submission depends on what a person was doing before the show of authority: a fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away." Id. at 262.  While Johnson did not physically engage with Officer Wilson, he did stop walking when Officer Wilson parked in Johnson's path.

Defendants contend that Johnson did not submit to Officer Wilson's authority because he fled.  Defendants argue that, though Johnson stopped, it was only momentary and thus "does not amount to a constitutionally actionable submission under the Fourth Amendment."  To support their argument, Defendants rely on a Second Circuit case, United States v. Baldwin, 496 F.3d 215 (2d Cir. 2007).  In Baldwin, the court held that there was no seizure when police pulled a car over but the driver refused to comply with the officers' commands and sped off when officers approached the car. Id. at 217–18.  The court explained that its holding was "not predicated on the brevity of Baldwin's stop, but on the fact that the stop itself did not constitute submission.  In other words, it is the nature of the interaction, and not its length, that matters." Id. at 219.

-7-

In this case, the nature of the stop supports a finding that Johnson was seized. Johnson's stop was more than a momentary pause before fleeing. Johnson stopped when Officer Wilson blocked his path and stayed throughout Officer Wilson's altercation with Brown. The fact that Johnson ran away after Officer Wilson shot Brown in the arm does not mean that Johnson did not first submit to Officer Wilson's authority. Rather, Johnson alleges that he stopped when he was first blocked by Officer Wilson, thereby submitting to Officer Wilson's authority, and that he ran solely out of fear for his life after the first shots were fired. Cf. United States v. Hayden, 759 F.3d 842, 847 (8th Cir. 2014) (holding that there was no seizure when officers pulled up alongside the suspects, shined a flashlight, identified themselves as police, and approached the suspects but did not block the ability of the suspects to cross the street, did not touch the suspects, and did not display a weapon); Baldwin, 496 F.3d at 217–18. Thus, viewing the facts in a light most favorable to Johnson, Johnson has sufficiently alleged that he was seized.

b. Objective Reasonableness

"[A] seizure, standing alone, is not sufficient for section 1983 liability. The seizure must be unreasonable." Moore v. Indehar, 514 F.3d 756, 762 (8th Cir. 2008) (quoting McCoy v. City of Monticello, 342 F.3d 842, 847 (8th Cir. 2003)). Excessive force claims are analyzed under the Fourth Amendment reasonableness standard. Schoettle v. Jefferson Cty., 788 F.3d 855, 859 (8th Cir. 2015); Graham v. Connor, 490 U.S. 386, 394 (1989). Courts "analyze this question from the perspective 'of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Plumhoff v. Rickard, 134 S. Ct. 2012, 2020 (2014) (quoting Graham, 490 U.S. at 396). Courts "thus 'allo[w] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" Id. (alteration in original) (quoting Graham, 490 U.S. at 396–97). This inquiry focuses on the totality of the circumstances, "including the severity of the crime at issue,

whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Schoettle, 788 F.3d at 859 (quoting Graham, 490 U.S. at 396).

Johnson argues that Officer Wilson's use of his gun during the seizure constitutes excessive force. Defendants claim that, because, in their view, there was no seizure, Johnson cannot claim Officer Wilson's use of force was excessive. Thus, Defendants offer no arguments regarding the reasonableness of Officer Wilson's use of force.

"[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." Small v. McCrystal, 708 F.3d 997, 1005 (8th Cir. 2013) (alteration in original) (quoting Brown v. City of Golden Valley, 574 F.3d 491, 499 (8th Cir. 2009)). Taking the allegations in Johnson's complaint as true, Officer Wilson stopped Johnson and Brown because they were walking in the middle of the street in violation of a municipal ordinance. Johnson and Brown were walking peacefully down Canfield Drive when Officer Wilson parked directly in their path. Johnson and Brown stopped walking when Officer Wilson parked his car and forcefully struck Brown with his car door. The facts, as alleged, show that Brown and Johnson did not flee from Officer Wilson and did not resist arrest. Based on these facts, it was unreasonable for Officer Wilson to draw his gun and shoot twice, striking Brown in the arm. Thus, Johnson has sufficiently alleged a violation of a constitutional right.

2. Clearly Established Law

Having determined that Johnson has sufficiently alleged a violation of a constitutional right, we move to our next inquiry: whether Officer Wilson's use of his gun against Johnson and Brown constituted a clearly established constitutional violation. Defendants offer no arguments regarding whether it was clearly

established that Officer Wilson could not use deadly force in these circumstances. Again, Defendants only argue it was not clearly established that an officer could violate an individual's Fourth Amendment rights where no seizure has occurred.

"A right is clearly established when that right is so clear that a reasonable official would understand that what he is doing violates that right." Craighead v. Lee, 399 F.3d 954, 962 (8th Cir. 2005). "The right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment." Small, 708 F.3d at 1005. In Tennessee v. Garner, the Supreme Court held that "[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." 471 U.S. 1, 11 (1985). Later, in Graham v. Connor, the Supreme Court held that the use of force is unconstitutional if, under objective standards of reasonableness, the force is excessive. 490 U.S. 386, 396 (1989).

To be clearly established, however, the law "must be 'particularized' to the facts of the case." White v. Pauly, 137 S. Ct. 548, 552 (2017) (per curiam) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). While "general statements of the law are not inherently incapable of giving fair and clear warning to officers, . . . in light of the pre-existing law the unlawfulness must be apparent." Id. (citations omitted). Thus, the general statements regarding the constitutionality of use of force in "Garner and Graham do not by themselves create clearly established law outside 'an obvious case.'" Id. (quoting Brosseau v. Haugen, 543 U.S. 194, 199 (2004) (per curiam)).

"At least since Garner was decided nearly 20 years ago, officers have been on notice that they may not use deadly force unless the suspect poses a significant threat of death or serious physical injury to the officer or others." Craighead, 399 F.3d at 962. Further, it is clearly established that "[f]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to

the security of the officers or the public." Small, 708 F.3d at 1005 (quoting Brown, 574 F.3d at 499).

In Brown v. City of Golden Valley, this court held the use of a Taser on a passenger in a car pulled over for a misdemeanor, "who was not fleeing or resisting arrest, who posed little to no threat to anyone's safety, and whose only noncompliance with the officer's commands was to disobey two orders to end her phone call to a 911 operator" constituted excessive force. 574 F.3d at 499. And in Shekleton v. Eichenberger, this court again held that the use of a Taser against a suspected misdemeanant constituted excessive force. 677 F.3d 361 (8th Cir. 2012). In Shekleton, an officer approached a man outside a bar to ask about what the officer thought was an argument. Id. at 364. The suspect answered the officer's questions and followed the officer's direction to move away from the street corner. Id. After further questioning, the officer instructed the suspect to put his hands behind his back and, when the officer attempted to handcuff the suspect, the officer and suspect fell to the ground. Id. at 365. The officer then deployed his Taser. Id. We held that "[u]nder these facts, [where the plaintiff] was an unarmed suspected misdemeanant, who did not resist arrest, did not threaten the officer, did not attempt to run from him, and did not behave aggressively towards him," the officer's use of the Taser constituted excessive force. Id. at 366–67.

In accordance with White, these cases are sufficiently particularized that a reasonable officer would be on notice that use of deadly force in the circumstances alleged in Johnson's complaint was unlawful. "While [the Supreme] Court's case law 'do[es] not require a case directly on point' for a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" White, 137 S. Ct. at 551 (alteration in original) (quoting Mullenix v. Luna, 136 S. Ct. 305, 308 (2015)). Requiring a particularized case to show clearly established law does not require us to abandon logic. It is beyond dispute that a Taser involves less force and, generally, causes less harm than a gun. It follows that, if the

use of a Taser in these circumstances constitutes excessive force, the use of a gun in these circumstances necessarily constitutes excessive force. This Circuit's previous cases "'giv[e] fair and clear warning' to officers" that the use of deadly force in these circumstances is unlawful. Id. at 552 (quoting United States v. Lanier, 520 U.S. 259, 271 (1997)).

At the time of the incident in this case, the law was sufficiently clear to inform a reasonable officer that it was unlawful to use deadly force against nonviolent, suspected misdemeanants who were not fleeing or resisting arrest, posed little or no threat to the officer or public, did not receive verbal commands to stop, and whose only action was to stop walking when a police car blocked their path. As a result, a reasonable officer in Officer Wilson's position would not have shot his gun and the district court correctly denied qualified immunity to Officer Wilson at this stage in the proceedings.

## B.  Supervisory Liability

Johnson alleges that Chief Jackson has § 1983 liability due to his deliberate indifference to a pattern of constitutional violations committed by officers in his police department. Johnson claims that Chief Jackson failed to train, supervise, and discipline Ferguson police officers regarding unlawful seizures and use of excessive force. Chief Jackson argues he is entitled to qualified immunity and the district court erred in denying the motion to dismiss on that basis.

"Section 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights." Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997). "Rather, Chief [Jackson] can be liable for Officer [Wilson's] constitutional violation only 'if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation . . . .'" Id. (omission in original) (quoting Tilson v. Forrest

City Police Dep't, 28 F.3d 802, 806 (8th Cir. 1994)).  Further, where liability is premised on a supervisor's deliberate indifference to misconduct, "[t]he supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." Kahle v. Leonard, 477 F.3d 544, 551 (8th Cir. 2007) (second alteration in original) (quoting Ripson v. Alles, 21 F.3d 805, 809 (8th Cir. 1994)).

Johnson alleges that the detention and use of force against Johnson and Brown was part of a pattern and practice of unlawful detentions and use of excessive force by the Ferguson Police Department.  Further, Johnson alleges that Chief Jackson (1) failed to properly hire, train, discipline, and supervise officers; (2) failed to adopt and enforce polices, practices, and procedures regarding the Ferguson Police Department's internal affairs; and (3) condoned the practice of unlawful detentions and use of excessive force by not investigating and rarely reviewing claims of officer misconduct.  To support the claims in his complaint, Johnson quotes the Department of Justice's ("DOJ") findings following its investigation of the Ferguson Police Department.  The DOJ report notes that the Ferguson Police Department and court system work together to generate revenue.  Further, the report notes that the Ferguson Police Department does not supervise its officers' conduct, particularly with regards to officer use of force. These allegations sufficiently state a claim for supervisory liability under § 1983.

"When a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." S.M. v. Krigbaum, 808 F.3d 335, 340 (8th Cir. 2015).

As discussed above, Johnson alleges that Chief Jackson condoned the unconstitutional acts by failing to investigate or review claims of officer misconduct. Specifically, Johnson alleges that "[w]hen reviewing use of force, Chief Thomas Jackson rarely reviews offense reports, and has never overturned a supervisor's determination of whether a use of force fell within [Ferguson Police Department] policy." The fact that Chief Jackson received reports involving use of force indicates that he knew about Ferguson police officers' conduct. Thus, Johnson has sufficiently alleged that Chief Jackson had notice of the unconstitutional acts committed by his officers. Further, by failing to review offense reports and hold officers accountable for excessive force, Chief Jackson was deliberately indifferent to the unconstitutional practices carried out by Ferguson police officers. As a result, the district court did not err by denying Chief Jackson qualified immunity.

C.  Municipal Liability

Defendants claim that this court has pendent appellate jurisdiction to review the district court's denial of Defendants' motion to dismiss as to the City of Ferguson. "'[W]hen an interlocutory appeal is before us . . . as to the defense of qualified immunity, we have jurisdiction also to decide closely related issues of law,' i.e., pendent appellate claims." Kincade v. City of Blue Springs, 64 F.3d 389, 394 (8th Cir. 1995) (quoting Drake v. Scott, 812 F.2d 395, 399 (8th Cir. 1987)). "[A] pendent appellate claim can be regarded as inextricably intertwined with a properly reviewable claim on collateral appeal only if the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal—that is, when the appellate resolution of the collateral appeal necessarily resolves the pendent claim as well." Id. (alteration in original) (quoting Moore v. City of Wynnewood, 57 F.3d 924, 930 (10th Cir. 1995)).

Defendants argue that the question of municipal liability is inextricably intertwined with the question of qualified immunity. This argument rests on

-14-

Defendants' claim that there was no seizure at all and, thus, no constitutional violation.  Thus, Defendants argue, if Johnson's allegations do not sustain his § 1983 claim against Officer Wilson and Chief Jackson, the allegations cannot sustain the § 1983 claim against the City of Ferguson.

Our decision to uphold the district court's denial of qualified immunity to Officer Wilson and Chief Jackson at this stage in the proceedings does not resolve whether Johnson stated a claim for municipal liability.  Whether Officer Wilson and Chief Jackson are entitled to qualified immunity turns on whether it was clearly established that Officer Wilson violated Johnson's Fourth Amendment rights.  The City of Ferguson's municipal liability, however, turns on whether the constitutional violation was caused by the City "engaging in a widespread and persistent pattern of unconstitutional misconduct that municipal policymakers were either deliberately indifferent to or tacitly authorized."  Davis v. White, 794 F.3d 1008, 1014 (8th Cir. 2015) (quoting Russell v. Hennepin Cty., 420 F.3d 841, 849 (8th Cir. 2005)).  Thus, these issues are not inextricably intertwined because they involve two separate questions.  See Veneklase v. City of Fargo, 78 F.3d 1264, 1270 (8th Cir. 1996) (holding that the denial of summary judgment on a municipal liability claim was not inextricably intertwined with the underlying qualified immunity appeal because resolving the relevant claims "require[d] entirely different analyses").  As a result, we do not have jurisdiction to review the City of Ferguson's liability.  See id.

### III.

For the foregoing reasons, we affirm the district court's denial of qualified immunity to Officer Wilson and Chief Thomas and dismiss the rest of the appeal for lack of jurisdiction.

WOLLMAN, Circuit Judge, dissenting.

With all due respect, I disagree with the majority opinion's conclusion that Johnson was seized within the meaning of the Fourth Amendment when Officer Wilson crudely ordered him and his companion Brown to get back to the sidewalk, parked his vehicle in such a manner as to block their direct line of travel, and then engaged in an armed conflict with Brown.

Because Johnson himself was neither physically restrained nor prevented from proceeding to the sidewalk in compliance with the officer's command rather than fleeing as he did, I believe that the question before us is alike to that presented in California v. Hodari D., 499 U.S. 621 (1991), and that our answer should be the same.

> The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield.  We hold that it does not.

Id. at 626.  Likewise, as the Court wrote in Brendlin v. California, 551 U.S. 249, 254 (2007), "[T]here is no seizure without actual submission."

An unconstitutional seizure in the circumstances presented by this case occurs only upon the intentional acquisition of physical control terminating freedom of movement through means intentionally applied.  Brower v. City of Inyo, 489 U.S. 593, 596-97 (1989).  Such a termination occurred in Brower as a result of Brower's fatal impact with the police-established roadblock, just as it did in Garner, in which Garner's flight was terminated by the officer's bullet.  Tennessee v. Garner, 471 U.S. 1 (1985).

Here, however, Johnson's status during his flight from Officer Wilson was like that of the moonshine-carrying defendant's during the course of his flight in Hester

-16-

v. United States, 265 U.S. 57, 58 (1924).  See Hodari D., 499 U.S. at 629; Brower, 489 U.S. at 597-98.

      I would reverse the district court's judgment and remand with directions to dismiss the complaint.

_____

**United States Court of Appeals**
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
www.ca8.uscourts.gov

**MEMORANDUM**

**TO:**  All Counsel of Record

**FROM:**  Susan R. Duenow

**DATE:**  July 31, 2017

Re:  16-1697  Dorian Johnson v. City of Ferguson, et al

    On July 25, 2017, the Court issued an opinion in the referenced appeal.  Please replace your opinion with the attached corrected opinion.  The original opinion was corrected at page 15, first full paragraph, line 3.  "Officer Johnson was corrected to "Officer Wilson".

cc:  All Circuit Judges
     St. Paul Clerk's Office
     West Publishing
     Missouri Lawyers Weekly

    District Court/Agency Case Number(s):  4:15-cv-00832-AGF